David Ali Chami
SBN: 027585
Price Law Group, APC
1204 E. Baseline Road, Suite 102
Tempe, AZ 85283
Tel: (866) 881-2133
Fax: (866) 401-1457
david@pricelawgroup.com
Attorney for Plaintiff,
Hattie Wallace

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

HATTIE WALLACE,

                 Plaintiff,

v.

NAVIENT SOLUTIONS, INC. *f/k/a* SALLIE MAE, INC.,

                 Defendant.

No.

**Plaintiff's Complaint**

## PLAINTIFF'S COMPLAINT

Plaintiff, HATTIE WALLACE, (hereinafter referred to as "Plaintiff") brings this action for damages, and other legal and equitable remedies resulting from the illegal actions of NAVIENT SOLUTIONS, INC. *f/k/a* SALLIE MAE, INC. ("Defendant") in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and resulting from illegal actions of Defendant in debiting Plaintiff's bank account on a recurring basis without obtaining signed written authorization within the meaning of the Electronic Fund Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA").  The TCPA prohibits unsolicited voice calls to

1

cellular telephones without prior express consent within the meaning of the TCPA.  In an effort to enforce a fundamental right to privacy, Plaintiff alleges, by and through her counsel, Price Law Group, APC, the following against Defendant:

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq*. ("EFTA").

2. Count II of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. 227, *et seq.* ("TCPA").

3. The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5. Congress also specifically found that "the evidence presented to the Congress indicates that

automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

6. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 15 U.S.C. 1693(m) (EFTA).

8. Jurisdiction of this court arises pursuant to 15 U.S.C. 1693(m), "without regard to the amount in controversy, any action under this section may be brought in any United States district court."

9. This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

11. Plaintiff is, and at all times mentioned herein, was a citizen and resident of Chandler, Maricopa County, Arizona.

12. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153 (10).

3

13. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein, was a corporation whose corporate headquarters are in Wilmington, Delaware.

14. Defendant is, and at all times mentioned herein, a corporation and is a "person," as defined by 47 U.S.C. § 153 (10).

15. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of Arizona and in the County of Maricopa, and within this judicial district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

16. As noted above, in 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

17. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."Specifically, the plain language of section 227(b)(l)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

18. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

19. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. The FCC "emphasize[d] that prior express consent is deemed to be granted

only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."

20. The TCPA prohibits the use of any "automatic telephone dialing systems" to call cellular telephones. It also prohibits the use of artificial or prerecorded messages.

   a. "Automatic telephone dialing system" means any equipment that has the "*capacity to dial numbers without human intervention.*" *Griffith v. Consumer Portfolio Serv., Inc.,* 2011 WL 3609012 (N.D. Ill. Aug. 16, 2011) (emphasis original).

### FACTUAL ALLEGATIONS

21. Within four (4) years of Plaintiff filing this Complaint, Defendant communicated with Plaintiff regarding Plaintiff's private student loan accounts ("Account").

22. Within four (4) years of Plaintiff filing this Complaint, Defendant began to utilize Plaintiff's cellular telephone number, ending in 7873, to place virtually daily incessant calls to Plaintiff pertaining to the Account.

23. Within four (4) years of Plaintiff filing this Complaint, Defendant has called Plaintiff's cellular telephone from several telephone numbers, including, but not limited to: 877-614-1160, 302-261-5692, 765-637-0797.  These are all Defendant's telephone numbers.

24. On or around July 2, 2014, Plaintiff spoke with one of Defendant's collectors, Kaleb Norris, and entered into a payment plan to make interest payments on the Account.

25. On or around July 2, 2014, Plaintiff orally agreed with Mr. Norris to allow monthly payments of $54.76 to be withdrawn from Plaintiff's personal checking account and paid towards the Account.

26. Defendant did not provide to Plaintiff, nor did Plaintiff execute, any written or electronic writing memorializing or authorizing the recurring or automatic payments.

27. Plaintiff did not provide Defendant either with a written or an electronic signature

authorizing the recurring or automatic payments.

28. All payments were drawn from Plaintiff's personal checking account.

29. Without Plaintiff's written permission, on or around July 4, 2014, Defendant withdrew $54.76 from Plaintiff's personal checking account.

30. Without Plaintiff's written permission, on or around August 6, 2014, Defendant withdrew $80.25 from Plaintiff's personal checking account.

31. The withdrawal on August 6, 2014, in the amount of $80.25, was not authorized orally by Plaintiff, or with Plaintiff's written consent.

32. In or around August, 2014, due to the fact that Defendant had withdrawn an amount unauthorized by Plaintiff from her personal checking account, Plaintiff closed said personal checking account.

33. Shortly thereafter, in or around September, 2014, Defendant called Plaintiff on her cellular telephone with pre-recorded messages.

34. Defendant calls Plaintiff's cellular telephone at an annoying and harassing rate.

35. In or around September, 2014, Plaintiff requested that Defendant stop calling.

36. Nonetheless, despite Plaintiff's cease and desist request, Defendant continued to place repeated calls to Plaintiff, on her cellular telephone, using an "automated telephone dialing system."

37. Defendant made numerous telephone calls to Plaintiff's cellular telephone. The telephone numbers that Defendant used to contact Plaintiffs with an "automatic telephone dialing system," were assigned to cellular telephone services as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

38. The calls Defendant placed to Plaintiff's cellular telephone were placed using an automatic telephone dialing system.

6

39. Defendant uses an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1), to place its repeated calls to Plaintiff.

40. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

41. Defendant frequently uses skip-tracing services to locate telephone numbers used by consumers whom Defendant wishes to call.

42. Defendant's calls are placed to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

43. Under the TCPA and pursuant to the FCCs January 2008 Declaratory Ruling, the burden is on the Defendant to demonstrate that the Plaintiff provided express consent within the meaning of the statute because it is the best entity to determine how numbers were attained.

44. Plaintiff is not a customer of Defendant's services, and has never provided her cellular telephone number to Defendant for any purpose whatsoever.

45. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on her cellular telephone pursuant to 47 U.S.C. 227(b)(1)(A).

46. Even if Defendant received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice, "prior express consent" was revoked when Plaintiff requested that Defendant stop calling.

47. The natural consequences of Defendant's statements and actions was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

48. The natural consequences of Defendant's statements and actions was to cause Plaintiff mental distress.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I
## DEFENDANT VIOLATED THE ELECTRONIC FUND TRANSFER ACT

49. Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

50. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

51. Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

52. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."  *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

53. Defendant debited Plaintiff's checking account on a recurring basis without obtaining a written authorization signed or similarly authenticated from Plaintiff for preauthorized electronic fund transfers from Plaintiff's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

54. Defendant debited Plaintiff's checking account on a recurring basis without providing to Plaintiff a copy of a written authorization signed or similarly authenticated by Plaintiff for preauthorized electronic fund transfers from Plaintiff's account, thereby violating Section

8

907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

WHEREFORE, Plaintiff, HATTIE WALLACE, respectfully requests judgment be entered against Defendant, NAVIENT SOLUTIONS, INC. *f/k/a* SALLIE MAE, INC. for the following:

*55.* Actual damages in the amount of $135.01;

*56.* Statutory damages of $1,000.00 pursuant to the Electronic Fund Transfer Act, §916(a)(2)(A);

*57.* Costs and reasonable attorneys' fees pursuant to the Electronic Fund Transfer Act, §916(a)(3); and

*58.* Any other relief this Honorable Court deems appropriate.

## COUNT II
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

59. Plaintiff repeats and re-alleges paragraphs 1-48 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

60. Defendant made unsolicited commercial phone calls to the wireless telephone number of Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, *as* evidenced by the pre-recorded nature of the calls.

61. These phone calls were made without the prior express consent of Plaintiff.

62. Defendant's conduct therefore violated the TCPA by:

    a.  Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, HATTIE WALLACE, respectfully requests judgment be entered

against Defendant, NAVIENT SOLUTIONS, INC. *f/k/a* SALLIE MAE, INC., for the following:

63. As a result of Defendant's negligent violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).

64. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) and 47 U.S.C. 227(b)(3)(C).

65. Plaintiff is entitled to and seek injunctive relief prohibiting such conduct in the future. Any other relief that this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED,

DATED: October 15, 2015

By: /s/ David Ali Chami
       David Ali Chami
       Price Law Group, APC
       Attorney for Plaintiff
       HATTIE WALLACE

10